# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUX GLOBAL LABEL COMPANY, LLC  :<br>    *Plaintiff*, | |
| v.  : | CIVIL ACTION<br>NO. 18-5061 |
| JAMES H. SHACKLETT, IV; CCL INDUSTRIES, :<br>INC.; CCL INDUSTRIES (USA) CORP.;<br>CCL INDUSTRIES CORPORATION; CCL<br>LABEL INC.; CCL LABEL CORP.; CCL  :<br>TUBE (WILKES-BARRE), INC.; and, XYZ CCL<br>COMPANIES 1-100<br>    *Defendants*.  : | |

## **MEMORANDUM**

JONES, II  J.                                                                                                          July 31, 2019

## I.     INTRODUCTION

Plaintiff Lux Global Company (hereinafter "Lux"), commenced this action against Defendants (hereinafter "CCL Defendants") alleging misappropriation of trade secrets under both federal and state law, along with various contract claims and a conspiracy claim.[1] Defendants filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of all counts of the Complaint. For the reasons set forth below, Defendants' Motion shall be granted as to all claims against CCL Industries (USA) Corp., CCL Label Corp., CCL Industries Corporation, CCL Label, Inc., and XYZ CCL Companies 1-100. Defendants'

---

[1] Specifically, Plaintiff's claims consist of the following: misappropriation of trade secrets under the Defend Trade Secrets Act (Count I); misappropriation of trade secrets under Pennsylvania's law (Count II); tortious interference with business relationships (Count III); breach of fiduciary duty, good faith and loyalty (Count IV); conversion (Count V); unjust enrichment (Count VI); and, civil conspiracy (Count VII).

1

Motion shall be denied as to Counts I, II, IV, VI, and VII against Defendants CCL Industries, Inc., CCL Tube (Wilkes-Barre), Inc. and James H. Shacklett, IV. Plaintiff shall be granted leave to amend Count III. Lastly, Count V shall be dismissed as to Defendants CCL Industries, Inc. and CCL Tube (Wilkes-Barre), Inc. only.[2]

## II. FACTUAL & PROCEDURAL BACKGROUND

Lux filed this Complaint against a group of eight entities under the umbrella of "CCL." (Compl. ¶¶ 1-9.)[3] CCL and Lux are competitors in the label printing industry. (Compl. ¶ 3.) Defendant James H. Shacklett, IV, previously ran the National Label Singapore operations as CEO of National Label Co. ("NLC") Asia until NLC was purchased by Lux in April 2017. (Compl. ¶ 17.) Prior to the sale of NLC, it was owned and operated by the Shacklett family. (Compl. ¶ 16.) After this transaction, Shacklett's new position from April 2017 until August 2017 became Chief Operating Officer for Lux. (Compl. ¶ 21.)

While working for Lux, Shacklett was in communication with Ben Rubino, President of Home and Personal Care Worldwide of CCL Industries, Inc. and Geoff Martin, the President and CEO of CCL Industries, Inc. (Compl. ¶¶ 34-37.) On August 2, 2017, Shacklett submitted a written resignation to Lux and immediately began working for CCL Tube (Wilkes-Barre), Inc., a division of CCL Industries. (Compl. ¶¶ 2, 26.) Although Shacklett was employed by CCL Tube, Inc., the extent of his employment went beyond this entity and intertwined with the complex corporate web of entities under CCL. (Compl. ¶¶ 2, 34.)

Days prior to his resignation from Lux, Shacklett used a thumb drive to acquire "confidential, proprietary, and trade secret information" from his work computer and never

---

[2] Count V shall remain against Defendant James H. Shacklett.
[3] Defendants include: James H. Shacklett IV, CCL Industries Inc., CCL Industries (USA) Corp., CCL Industries Corporation, CCL Label, Inc., CCL Label Corp., CCL Tube (Wilkes-Barre), Inc., and XYZ CCL Companies 1-100 (all entities collectively referred to as "CCL").

returned any of the information taken. (Compl. ¶¶ 28, 39.) Shacklett downloaded records including: pricing lists, key contact information, customer needs and demands, marketing strategies, and data comparisons. (Compl. ¶ 28.)

Prior to filing the lawsuit, Lux sent numerous warnings and demands for CCL to return the information obtained on the thumb drive, and CCL concurrently attempted to engage in a discussion regarding the purchase of the Lux Singapore operations. (Compl. ¶¶ 34-41.) In early September 2017, Shacklett was communicating with Rubino and Martin with regard to CCL's interest in acquiring Lux Singapore operations, while also looking at the Singapore documents contained on the thumb drive. (Compl. ¶¶ 34-37.) Further, while in possession of the thumb drive, Shacklett discussed the Lux Singapore operations with CCL representatives, gave advice on potential applicants that worked for Lux, and interfered with Lux's bargain and agreement to purchase NLC. (Compl. ¶¶ 67-69.)

On November 21, 2018, Plaintiff filed a Complaint seeking a preliminary injunction, permanent injunction, and other relief against CCL Defendants. The first three Counts of Plaintiff's Complaint are against all Defendants. Counts I and II involve the misappropriation of trade secrets under federal and Pennsylvania law, and Count III involves tortious interference with business relationships. (Compl. 11-12, 15.) Count IV alleges a breach of fiduciary duty, good faith and loyalty against Defendant Shacklett. (Compl. 17.) Lastly, Plaintiff's remaining claims involve: conversion (Count V), unjust enrichment (Count VI), and civil conspiracy (Count VII) against all Defendants. (Compl. 19, 20-22.) Upon referral of the request for Preliminary Injunction to United States Magistrate Judge Lynne A. Sitarski, the parties were ordered to conduct preliminary discovery, and reached a stipulation to prevent further litigation on the Motion for Preliminary Injunction. (ECF No. 53-1.) Defendants also agreed to refrain

from using the thumb drive and that CCL would not interfere with Lux's employment, customers, or business relationships. (ECF No. 53-1.)

Defendants filed the instant Motion pursuant to Federal Rules of Civil Procedure 12(b)(6), arguing Lux "has not sufficiently pled a single claim against any CCL entity." (Mot. Dismiss 1.) For the reasons set forth below, Defendants' Motion shall be granted in part and denied in part.

## III. STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

It is incumbent upon a plaintiff to plead with clarity. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Phillips*, 515 F.3d at 233 (internal quotations marks and citation omitted). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

### A. Defendants

#### 1. Claims Against CCL Industries (USA) Corp. and CCL Label Corp.

Defendants maintain that CCL Industries (USA) Corp. was merged out of existence on May 13, 2016, and CCL Label Corp. was merged out of existence on December 31, 2000. (Mot. Dismiss 3.) Plaintiff's Brief in opposition to the instant Motion sheds no light on this issue. The Third Circuit has clearly established that an issue which is not briefed is consequently waived. *Gorum v. Sessoms*, 561 F.3d 179, 185 n.4 (3d Cir. 2009). Accordingly, all claims against these two defunct CCL entities shall be dismissed.

#### 2. Remaining CCL Entities

A parent company cannot be liable for the operations of a subsidiary unless that corporate parent "actively participated in and exercised control over the operations" of the subsidiary facility. *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). Only then can the corporate veil be pierced. *Id*. In *Bestfoods*, the Supreme Court held that any parent corporation's liability as an operator stems directly from its control over the subsidiary alleged of wrongful conduct. *Id*. at 68.

Here, the alleged wrongful conduct stems from Defendant Shacklett, an employee of CCL Tube (Wilkes-Barre), Inc., and Shacklett's communication with high-level employees of CCL Industries, Inc. (Compl. ¶¶ 34, 37, 59.) Any CCL entity directly involved in the operations of CCL Tube (Wilkes-Barre), Inc. and the alleged conduct would fall within the confines of this liability. While working for Lux, Shacklett was in communication with Ben Rubino, President of Home and Personal Care Worldwide of CCL Industries, Inc. and Geoff Martin, the President and CEO of CCL Industries, Inc. (Compl. ¶¶ 34-37.) Further, while in possession of the thumb drive,

Shacklett discussed the Lux Singapore operations with Rubino and Martin, gave advice on potential applicants that worked for Lux, and interfered with Lux's bargain and agreement to purchase NLC. (Compl. ¶¶ 67-69.) Therefore, Plaintiff's Complaint suggests Shacklett was not restricted to CCL Tube, Inc. when performing and providing services and CCL Industries, Inc. has involvement in this dispute. (Compl. ¶ 3.)

Grouping the remaining CCL Defendants as "XYZ CCL Companies 1-100" is not sufficient to survive a Motion to Dismiss and would result in piercing the corporate veil without conforming to the demanding requirements. Plaintiff's Complaint alleges that CCL Industries Inc., along with its many subsidiaries, managed operations with information located on Shacklett's external storage device. (Compl. ¶¶ 34-37.) However, Plaintiff has not alleged specific facts indicating involvement of these other entities within CCL. Plaintiff's Complaint sufficiently points to CCL Industries, Inc., CCL Tube, Inc., and Shacklett as active participators with regard to this confidential information; however, the remaining Defendants shall be dismissed. (Compl. ¶¶ 34, 37, 59.)

### B. Claims

#### 1. Misappropriation of Trade Secrets Under DTSA and PUTSA

Defendants move for dismissal of Plaintiff's misappropriation of trade secret claims, on the basis that Plaintiff has failed to provide necessary factual allegations. The Defend Trade Secrets Act (hereinafter "DTSA") defines a "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information" and this may include "methods, techniques, processes, [and] procedures" stored electronically. 18 U.S.C. § 1839(3). The Pennsylvania Uniform Trade Secrets Act (hereinafter "PUTSA") defines a "trade secret" as

a "compilation including a customer list, program, device, method technique or process." 12 Pa. Cons. Stat. § 5302(2)(iii).

Although DTSA and PUTSA define a trade secret in a slightly different manner, they both essentially protect the same type of information. *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018). Both define a trade secret as information that: "(a) the owner has taken reasonable measures to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who do not have access to the information would obtain economic value from its disclosure or use." *Id*. (citing 18 U.S.C. § 1839(3); 12 Pa. Cons. Stat. § 5302). When assessing a PUTSA claim, public disclosure of confidential information does not require that the trade secrets be disclosed in detail. *Pennfield Precision, Inc. v. EF Precision, Inc.*, No. 002-280, 2000 U.S. Dist. LEXIS 11971, at *10-11 (E.D. Pa. Aug. 15, 2000).

Here, Lux has sufficiently provided specific factual allegations to plausibly show a right to relief without disclosing its confidential information. Lux has identified trade secrets at issue that qualify as a "trade secret" under both PUTSA and DTSA. The trade secrets are allegedly located on a thumb drive containing pricing lists and customer analysis that include key contact information, customer needs and demands, marketing strategies, and data comparisons. (Compl. ¶ 28.) The information was electronically stored and contained the financial and business matters required under DTSA and PUTSA. 18 U.S.C. § 1839(3); 12 Pa. Cons. Stat. § 5302. Drawing all reasonable inferences in favor of Plaintiff as this Court must do, Lux has provided the necessary detail regarding the trade secrets held within the thumb drive.

Additionally, Plaintiff has alleged that the thumb drive includes customer information, which has long been protected as a trade secret under Pennsylvania law. *SI Handling Sys. v.*

*Heisley*, 753 F.2d 1244, 1258 (3d Cir. 1985); *see also Synthes, Inc. v. Emerge Med., Inc.*, Civ. No. 11-1566, 2012 U.S. Dist. LEXIS 134886, at *101-02 (E.D. Pa. Sept. 19, 2012) (holding that a claim is sufficiently pled under PUTSA when the trade secret included information pertaining to the plaintiff's customers, business activities, strategies, and product development plans). Similarly under DTSA, the Supreme Court has held that a trade secret is a "formula, pattern, device, or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it" where the subject of the trade secret is not public knowledge. *Kewanee v. Bicron*, 416 U.S. 470, 474-75 (1974). Lux has consistently alleged that the information on the thumb drive is confidential and not available to the public, thereby satisfying pertinent pleading requirements under PUTSA and DUTSA. (Compl. ¶¶ 40-41.)

Additionally, Lux has taken reasonable measures to keep this trade secret information undisclosed. Lux utilized numerous precautions to sustain the information's secrecy including: storing sensitive files on separate network drives with restricted access through individual login and password protection, limiting information access to high-level employees and officers only, prohibiting non-employees' unsupervised access to non-public areas of their offices, and monitoring employee telephone and computer usage. (Compl. ¶ 25.) However, Defendants argue that Lux did not take reasonable measures to protect its trade secret information because Shacklett was not required to sign any non-disclosure agreements. (Mot. Dismiss 7.) Courts have determined that implementing these employment agreements exemplify the act of "taking reasonable steps" to prevent the disclosure of confidential information. *See Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 525 (E.D. Pa. 2018). However, courts have excused this method of protection when the former employee's actions are willful and malicious. *See B&B*

*Microscopes v. Armogida*, 532 F. Supp. 2d 744, 756-57 (W.D. Pa. 2007);[4] *see also Mifflinburg Tel., Inc. v. Criswell*, 277 F. Supp. 3d 750, 799 (M.D. Pa. 2017) (granting summary judgment on plaintiff's misappropriation of trade secret claims under PUTSA when defendant was not under any non-disclosure agreement and took former customer lists from plaintiff to use at another company). Because Plaintiff's allegations suggest Shacklett's behavior was willful and malicious, this Court must consider same when analyzing Lux's reasonable measures to protect its trade secrets.

The information in Shacklett's possession derives independent economic value from being kept secret and this information is not readily ascertainable to the public by proper means. Lux claims that the purchase of NLC included the confidential information at issue which was intended to provide Lux with a substantial advantage over its competitors. (Compl. ¶ 20.) While an employee at Lux, Shacklett had access to this information including: financial data, marketing information, development plans, clientele lists, customer pricing, and technological developments. (Compl. ¶ 23.) Plaintiff alleges this type of detailed information is not readily ascertainable to the public, and its disclosure jeopardized the stability of Lux and its operations. (Compl. ¶ 64.) Not only did Shacklett obtain this information just before leaving Lux, but Defendants allegedly used this information to: solicit customers to leave Lux; solicit Lux's experienced workforce; and attempt to purchase a portion of Lux's business. (Compl. ¶¶ 34, 40.)

---

[4] In *B&B*, the defendant spent a few months with the plaintiff employer while pretending to work in the plaintiff's best interest before resigning and taking with him valuable resources and contacts used to deprive the plaintiff of the ability to use its own trade secrets. *Id*. Here, Shacklett worked for Lux a short period of time and attended many high-level meetings wherein he allegedly discussed confidential and proprietary information in detail before resigning and moving to a large competitor with a thumb drive containing Plaintiff's confidential information. (Compl. ¶ 26.)

Access to customer and client information is one of many advantages CCL had while in possession of this confidential information.

As referenced above, under PUTSA and DTSA, a person misappropriates a trade secret when he or she has a duty to maintain the confidentiality of information and then discloses or uses the information without consent. 12 Pa. Cons. Stat. § 5302; 18 U.S.C. § 1839(5). Misappropriation of a trade secret also occurs when he or she is receiving information from someone who has a duty not to disclose and has not obtained consent. *Id*. For example, "the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" constitutes a misappropriation. *Brand Energy & Infrastructure Servs. v. Irex Contr. Grp.*, Civ. No. 16-2499, 2017 U.S. Dist. LEXIS 43497, at *8 (E.D. Pa. Mar. 24, 2017).

Lux has sufficiently identified facts regarding the Defendants' wrongful conduct and misappropriation of trade secrets. Shacklett downloaded confidential information onto a thumb drive days before resigning and was CCL's informant for information related to Lux such as customer and employee data. (Compl. ¶¶ 28, 48.) Not only did Shacklett download the information onto a thumb drive, but also he also allegedly attempted to delete those same records that he took. (Compl. ¶ 28.) *Even after being put on notice*, Defendants allegedly used the information on the thumb drive and refused to return the thumb drive to Lux. (Compl. ¶ 49.) Therefore, Lux has provided sufficient factual allegations to demonstrate wrongful conduct that establishes misappropriation by Defendants CCL Industries, Inc., CCL Tube (Wilkes-Barre), Inc. and James H. Shacklett, IV.

## 2. Tortious Interference with Business Relationships

To establish a claim for tortious interference a party must prove:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective clients, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

*Acumed LLC v. Advanced Surgical Services*, 561 F.3d 199, 212 (3d Cir. 2009) (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 529-31 (3d Cir. 1998)).

Under Pennsylvania law, a plaintiff must prove that the defendant was not privileged or justified in interfering with its contracts. *Id.* at 214. To that end,

> [o]ne who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor, or causes a third party to not continue an existing contract terminable at will, does not interfere improperly with the other's relation if: (a) the relation concerns a matter involved in the competition between the actor and the other; (b) the actor does not employ wrongful means; (c) his action does not create or continue an unlawful restraint of trade; and, (d) his purpose is at least in part to advance his interest in competing with the other.

*Id.* at 215.

In this case, Plaintiff has pleaded sufficient allegations to suggest that CCL was neither privileged nor justified in interfering with Lux's business relationships. Shacklett and other CCL employees allegedly used this confidential information at issue to further the interests of CCL while also wrongfully threatening Lux's employee and client stability. Not only were Defendants benefiting from this confidential information, but when asked to return the information taken, the Defendants intentionally refused to do so. (Compl. ¶¶ 28, 71, 77.) Therefore, Plaintiff has

sufficiently alleged Defendants used wrongful means, and were not privileged or justified in interfering with Lux's relationships.

The remaining three elements for a tortious interference claim are less suggestive from Plaintiff's Complaint. In *Bioquell*, plaintiff failed to specify a single contract or client that was lost because of the defendant's conduct, thereby leading the court to dismiss the claims of tortious interference. *Bioquell, Inc. v. Feinstein*, Civ No. 10-2205, 2010 U.S. Dist. LEXIS 124077, at *20 (E.D. Pa. Nov. 23, 2010). Here, Lux has not identified any specific loss of clients or customers. Instead, the Complaint alleges Plaintiff had "existing business relationships with its customers and employees" for which Defendants were aware of and "wrongfully" interfered with. (Compl. ¶¶ 67-68.) Because this Court cannot conclude that amendment would be futile, Plaintiff shall be permitted to do so with regard to this claim.

### 3. Breach of Fiduciary Duty, Good Faith, and Loyalty

A claim for breach of fiduciary duty requires establishment of:

> a confidential or fiduciary relationship between the plaintiff and defendant; (2) the defendant negligently or intentionally failing to act in good faith and solely for the benefit of the plaintiff in all matters for which he or she was employed; (3) the plaintiff suffered injury; and (4) the defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries.

*Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414-15 (E.D. Pa. 2006).

An employee owes an employer a duty of loyalty to:

> refrain from competing with the principal and from taking action on behalf of, or otherwise assisting, the principal's competitors throughout the duration of the agency relationship, as well as a duty not to use property or confidential information of the principal for the agent's own purpose or those of a third party.

*Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 667 (E.D. Pa. 2014) (citing RESTATEMENT (THIRD) OF AGENCY §§ 8.04, 8.05 (2006)).

Under Pennsylvania law, a fiduciary relationship arises when "one has reposed a special confidence in another to the extent that the parties are not dealing with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence, or justifiable trust on the other." *Becker v. Chicago Title Ins. Co.*, No. 03-2292, 2004 U.S. Dist. LEXIS 1988, at *23 (E.D. Pa. 1985). In Pennsylvania, "officers and directors of a corporation stand in a fiduciary relationship to the corporation, and must discharge the duties of their positions in good faith and with diligence, care, and skill which ordinarily prudent persons would exercise under similar circumstances." *Enterra Corp. v. SGS Associates*, 600 F. Supp. 678, 684 (E.D. Pa. 1985).

A fiduciary obligation can be viewed as a duty "to exercise the care that a reasonable person would exercise in a similar situation," and a duty of loyalty where one does not "take advantage of the fiduciary relationship by engaging in self-dealing." *Id*. This rule imposes a higher duty of care on corporate fiduciaries where "imprudence, wastefulness, carelessness, and negligence" may hold a director of a corporation liable if corporate losses result. *Bellis v. Thal*, 373 F. Supp. 120, 123 (E.D. Pa. 1974) (citing *Selheimer v. Manganese Corp. of America*, 423 Pa. 563, 580-81 (Pa. 1966)). In order to breach a duty of loyalty, one must divert business opportunities or leads to their new employer while still employed by the plaintiff. *Frontier Const. Co. v. Mazzella,* Civ. No. 09-794, 2009 U.S. Dist. LEXIS 106042, at *13 (W.D. Pa. Nov. 13, 2009).

Here, Lux alleges Shacklett was the CEO of NLC Asia and later COO of Lux, resulting in his possession of an extensive amount of confidential information about Lux. (Compl. ¶¶ 21, 23, 69.) A fiduciary relationship existed between Shacklett and Lux, and there is sufficient factual information to reasonably infer Shacklett was not acting in good faith. (Compl. ¶¶ 34, 40-

41, 68-69.) Plaintiff alleges that as a result of this breach, it has "lost its competitive position, lost its goodwill, potentially lost sales, and lost its investment in time and energy in generating its confidential information." (Compl. ¶ 84.) Defendants maintain that Lux has not alleged any facts that support improper conduct by Shacklett during his employment, while Lux claims Shacklett's act of downloading the confidential information onto the thumb drive while still employed and not returning this information upon his resignation, is a breach of one's fiduciary duty. (Mot. Dismiss 15; Compl. ¶ 84.) The record does not specify when this confidential information was transferred to CCL Defendants, and further discovery is necessary to determine the chain of events and communication between Shacklett and CCL that led to his departure with the information. At this stage, Lux has provided adequate factual allegations to survive a motion to dismiss.

    **4. Conversion**

A claim of conversion requires the "deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995); *see also Gladstone Tech., Partners, LLC v. Dahl*, 222 F. Supp. 3d 432, 441-42 (E.D. Pa. 2016). While most courts have expanded the claim of conversion to include intangible property, Pennsylvania law restricts this kind of property to that which is "customarily merged in or identified with a particular document such as a deed or stock certificate." *York Bank & Trust Co.*, 69 F.3d at 704. Further, Pennsylvania law allows for trade secrets to be the subject of a conversion claim if the plaintiff can prove: "(1) he or she owns the trade secret; (2) the trade secret was communicated to the defendant within a confidential relationship; and (3) the defendant used the trade secret to the plaintiff's detriment." *Am. Hearing Aid Assocs. v. GN*

14

*ReSound N. Am.*, 309 F. Supp. 2d 694, 705 (E.D. Pa. 2004) (citing *Schmidt, Long & Assocs. v. Aetna U.S. Health Care*, No. 00-CV-3683, 2001 U.S. Dist. LEXIS 10709, at *27 (E.D. Pa. July 26, 2001). Further, customer lists and business information qualify as a trade secret as long as the information is confidential and offers a competitive value to the owner. *Id*.

Lux has alleged sufficient facts to suggest that the information on the thumb drive is within the definition of a "trade secret." (Compl. ¶¶ 88-91.) The thumb drive included trade secrets with confidential information that Lux purchased from NLC, and this information was communicated to Shacklett within a confidential relationship. (Compl. ¶¶ 22-24.) Further, while still employed with Lux, Plaintiff alleges that Shacklett was communicating with CCL about potential employment and procured trade secret information for the benefit of CCL. (Compl. ¶¶ 28-30.)

Lastly, any benefit conferred upon a large competitor of Plaintiff such as CCL would lead to Plaintiff's detriment by "competing unfairly with its business and operations." (Compl. ¶ 41.) Accordingly, Plaintiff's conversion claim against Shacklett shall survive Defendants' Motion to Dismiss. However, the remaining CCL Defendants—namely, CCL Industries, Inc., and CCL Tube (Wilkes-Barre), Inc.—did not receive this information within a confidential relationship. Therefore, the conversion claims against these Defendants shall be dismissed.

### 5. Unjust enrichment

To sustain a claim of unjust enrichment under Pennsylvania law, a plaintiff must prove: "(1) the plaintiff conferred a benefit upon the defendant; (2) there was an appreciation of such benefit by the defendant; and, (3) the defendant accepted and retained such benefit under circumstances where it would be inequitable for the defendant to retain the benefit without payment of value." *Brown & Brown, Inc. v. Cola,* 745 F. Supp. 2d 588, 625 (E.D. Pa. 2010).

There is no requirement that the benefits be directly conferred onto the defendant or that the acceptance be intentional. *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006). Rather, the focus is on whether the defendant has been "unjustly enriched." *Id.*

Lux alleges that there was a benefit conferred upon CCL when CCL had access to its competitor's financial records, detailed projections, business strategies, customer lists, and pricing data. (Compl. ¶ 99.) Given that Lux had to pay for much of the information CCL was given from the thumb drive, CCL has improperly retained these benefits without repayment. (Compl. ¶ 20.) Defendants argue that Lux did not provide sufficient factual information to prove that CCL companies used this information to further their business interests. This Court finds otherwise. Shacklett was communicating with Rubino and Martin regarding CCL's interest in acquiring Lux Singapore operations while Shacklett simultaneously viewed the Singapore documents held within the thumb drive. (Compl. ¶¶ 34-37.) Accordingly, Plaintiff has pleaded sufficient facts to survive Defendants' Motion to Dismiss Plaintiff's unjust enrichment claims.

6. **Civil conspiracy**

Under Pennsylvania law, a claim for civil conspiracy requires a plaintiff to establish: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; (3) and actual legal damage." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)); *see also Burnside v. Abbott Laboratories*, 505 A.2d 973, 980 (Pa. Super. Ct. 1985) (noting civil conspiracy requires that two or more persons combine or enter into an agreement to commit an unlawful act or to do a lawful act by unlawful means). A conspiracy claim "must set forth allegations that address the period of the conspiracy, the object of the

conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159,179 (3d Cir. 2010). Additionally, proof of malice or the intent to injure is crucial for a claim of civil conspiracy to survive dismissal. *Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. Ct. 1974). Lastly, an "actionable civil conspiracy must be based on an independent wrong or tort that would constitute a valid cause of action if committed by one actor." *Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 292 (E.D. Pa. 2016) (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999)).

Here, Plaintiff alleges that months prior to Shacklett resigning, he began communicating with CCL Defendants about his future employment and the disclosure of Lux's trade secrets to "maliciously injure Lux." (Compl. ¶¶ 27, 108.) This communication, that continued between Shacklett and other CCL Defendants until the parties reached a stipulation in March 2019, constitutes as a combination of two or more persons acting with a common purpose to do an unlawful act as required for civil conspiracy. (Compl. ¶ 34.) Further, Plaintiff's Complaint suggests that these Defendants' actions fit within "an independent wrong or tort" because of their alleged misappropriation of trade secrets. (Compl. ¶ 40.) Shacklett downloaded confidential information onto a thumb drive one week before resigning and continued to use this information with other CCL Defendants in furtherance of a common purpose; namely, to further CCL's interests. (Compl. ¶¶ 39-41.) Finally, Lux claims because of these unlawful acts, it has "lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its confidential information," all of which allege actual legal damage. (Compl. ¶ 112.) Taking the allegations as true, Defendants' Motion to Dismiss Plaintiff's civil conspiracy claims shall be denied.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss shall be granted in its entirety as to CCL Industries (USA) Corp., CCL Label Corp., CCL Industries Corporation, CCL Label, Inc., and XYZ CCL Companies 1-100. Defendants' Motion shall be denied as to Counts I, II, IV, VI, and VII against Defendants CCL Industries, Inc., CCL Tube (Wilkes-Barre), Inc. and James H. Shacklett, IV.  Plaintiff shall be granted leave to amend Count III.  Lastly, Count V shall be dismissed as to Defendants CCL Industries, Inc. and CCL Tube (Wilkes-Barre), Inc. only and shall survive against Defendant Shacklett.

An appropriate Order follows.

BY THE COURT:


 /s/   C. Darnell Jones, II    J.